Case No. 19-5224, Brandon Mill, LLC and H. Bass Burt, Jr., A Balance v. Federal Deposit Insurance Corporation as receiver for First NBC Bank. Mr. Nace for the A Balance, Mr. Guarisco for the Appellee. Good morning, Mr. Nace. We'll hear from you. Good morning, Your Honor. Thank you. May it please the Court. The amended complaint, Your Federal Rules of Civil Procedure. The trial court in dismissing the complaint essentially ignored 18 pages and 100 paragraphs of detailed allegations in this matter. Rather than taking the facts as pled in a light most favorable to the plaintiff's appellants, the court glossed over these well-pled allegations and in dismissing almost every count, suggested that the plaintiff's The corporate structure of the Brandon Mill project is certainly complicated, but that does not negate the fact that the documents to which the USA through First NBC and tax partners entered created duties and obligations that include duties of First NBC to Mr. Burt and Brandon Mill, LLC. At the Rule 12B stage of the case, the plaintiff's appellants sufficiently pled their case such that the motion to dismiss should have been denied. Moreover, the trial court should have granted the plaintiff appellants the opportunity to amend with any factual concerns that were raised. The dismissal by the trial court was based largely in this matter on the fact that there was no duty between the USA through tax partners and First NBC. The duties are spelled out in the documents that covered the transaction. I don't believe there's any dispute in this matter that USA through FDIC is responsible for the obligations of First NBC bank and tax partners once they became the receiver and seized the bank. But what we know in this matter is that like past experience, Mr. Burt, who was a developer who rehabbed old properties and historic buildings, had worked with First NBC when First NBC was interested in acquiring tax credits. This project was no different than any other time that Mr. Burt and the bank had worked together. Everybody knew their responsibilities that were laid out in the operating agreement, the master lease agreement, and all the other documents at issue. Tax partner, First NBC, and thus FDIC's responsibility was to not interfere and not unreasonably withhold consent to refinance the project when the time came. In fact, when that time came, the FDIC tried to use their responsibility and their right to sign off on financing as leverage to extort a better deal for itself. So we have a contract scheme that has First NBC historic tax partners as a party to the Brandon Mill Tenant LLC operating agreement. The agreement was made with Brandon Mill Manager LLC. But that does not mean that these documents didn't create obligations that flowed both ways. The operating agreement, in its definition section, specifically incorporated the master lease as an operating document. And in that section, in section 4.7C, which is at appendix page 105, the operating agreement indicated that the investor member, who was here USA for purposes of this case and this appeal, agreed that the operating agreement was the Then when you go to the master lease agreement between Brandon Mill LLC, who was a plaintiff appellant, and Brandon Mill Tenant, the particular obligation consenting to the refinancing is reserved exclusively for tax partners in the bank and thus USA. So the duty in question is how do you handle the obligation of refinancing when requested? We brought several claims, six claims, four in tort, a breach of contract, I guess a fifth in tort, intentional interference with contractual relations. The trial court ruled that these claims were futile because of factual pleadings. Now, addressing first the two claims under South Carolina's Uniform LLC Act, the trial court ignored the fact that when a specific obligation is reserved for a member of the LLC, that member has the same obligations as a managing member under the South Carolina Act. So in this case- It's section 3344409H3. It's cited at page, I think, 25 of our brief. And this is from the South Carolina Uniform LLC Act. It says, a member who pursuant to the operating agreement exercises some or all of the rights of a manager in the management and conduct of the company's business is held to the standards of conduct in subsections B through F to the extent that the member exercises the managerial authority vested in a manager by this chapter. So in other words, if in fact you, a non-manager member, do somehow exert management control over a particular area, then you are held to duties of loyalty and duties of care. And that's right out of the South Carolina Code. That's the section that the trial court did not address in dismissing those two claims. We know that in this case, the only party that could consent to refinancing was tax partners. So they fall into this category of H3 where they have a specific management duty that did not otherwise apply. That leads us to, again, our burden is to establish a plausible theory of liability. And certainly it is plausible in the way we pled it, that FDIC breached their duty of loyalty and duty of care by unreasonably withholding consent as pled and as explained throughout the complaint and the amended complaint. Likewise, the same argument goes for our breach of the duty of was not pressed before the district court and the district court did not even discuss it. That whole theory, that whole management theory, assuming there's something to it, it wasn't raised below. And the district court... The district court did not address it. We did raise that the South Carolina Uniform Limited Liability Company Act did apply. And we cited to... No, no, I'm not talking about whether you think the act generally applied. I'm talking about your specific theory and the citations that you offered to support them. The H3 theory was not raised below. So my first instinct looking at this is if there's something there you forfeited, you never raised that theory. Whether or not it's tenable, that's another issue. Well, I do believe that we cited to the Uniform LLC Act. No, that's not my question. You are now focusing on a very specific provision in that statute and saying, this is how I come up with my manager theory. Because the theory is questionable. And I don't know where the authority comes from. So one wonders. And then when I look, I don't see any reference to that below. You never played that out below. You never played that theory out below. You can't now raise it with us for the first time. Well, Your Honor, I imagine, I think you're accurate in suggesting that we did not raise H3. But I do believe that the code section in general, the Uniform LLC Act was raised. And that's part of the code section. So that's how I would respond to that. I am into my rebuttal time. I do want to just raise the point regarding the negligence claim. The court found that, held that the negligence claim could not survive because there was a contract claim. At the same time, the trial court found that there was no contract. So it seems to me that either, if there is no contract as a matter of law, then in fact, the negligence claims, including negligence, breach of fiduciary duty, and intentional interference with contractual relations, those claims would survive. If, in fact, there's no contract, which we don't necessarily concede, but if there is no contract, then the negligence claims should move forward. If there are no questions, I would like to reserve some time for rebuttal. I did just have one question, which is, how do you think our ruling in this case would affect a case that's now pending before the district court that involves Brandon E. Mill, manager, suing the United States? So I don't know. Because the parties are different, I don't know that it would affect that case. I will obviously represent to the court that, at an appropriate time, we did file 495s as required under the Federal Tort Claims Act on behalf of those other entities. If any of these claims, obviously, Mr. Byrd has individual claims. This corporate entity would have individual claims. I would think that if this matter was remanded to move forward on any of the claims, the matters could be consolidated and litigated that way. They are different entities. The subject matter, Your Honor, is absolutely correct that they are the same issues, but there are different corporate entities that do have different claims, I believe. Thank you. All right. Thank you, Judge Rao. Judge Edwards, anything further? No, thank you. All right. We'll hear from Mr. Gorisco. Good morning, and may it please the court. My name is John Gorisco, and I represent the FDIC as receiver for First NBC Bank. The district court correctly dismissed plaintiff's complaint and denied leave to amend because none of the proposed amended claims stated a claim to relief that was plausible. I'd like to point out, initially, counsel talked about, alleged that it was not disputed that the FDIC was responsible for the acts of tax partners. As we pointed out in our brief, the district court found that for purposes of a 12B6 motion, the plaintiffs had sufficiently alleged that the FDIC had directly participated in the conduct of tax partners. For purposes of the motion to dismiss, the court treated the FDIC as equivalent with tax partners, and we have framed our arguments presuming, in other words, giving plaintiffs the benefit of the doubt, presuming that the FDIC could be held liable for any wrongdoing by tax partners. First of all, with respect to plaintiff's breach of contract claim, I think it's one of the best ways to follow all of the issues in this case is to look at the corporate structure that we've laid out on page six of our brief. This is the structure that's alleged by the plaintiffs, and in fact, plaintiffs do allege that this structure is to Bert's creation. This is how he structures these transactions where he seeks to renovate historical properties and generate tax credits. And the structure, keeping the structure, you know, the illustration of it in mind will help to frame the arguments. With respect to the breach of contract, the plaintiffs rely on two contracts that were in fact attached to their response to motion to dismiss, the master lease and what we call for short the tenant operating agreement, which is the agreement between manager and tax partners to create a tenant. And as we point out below, plaintiffs argue that tax partners breached a duty that was owed under the master lease by unreasonably failing to consent to the proposed refinancing of the construction loan. Now, tax partners is not a party to the master lease. Moreover, on the tenant operating agreement, tax partners is a party, but neither of the plaintiffs in this case is a party. Mr. Bert is not a party, and owner, our shorthand for Brandon Mill LLC, also is not a party. So if tax partners does not have a contractual relationship with either of the two plaintiffs, it cannot be held liable for breach of contract. And even we set forth in our brief how none of the definitions laid out in the operating agreement that are referred to by plaintiffs, none of those definitions suggest that somehow owner has the right to sue tax partners under the master lease. And as we also pointed out in our brief, even if tax partners could be sued under the master lease, even if it were a part of the master lease, the reference to tax partners in the master lease that's relied on by plaintiffs is section 20.5, which says that tax partners can grant or withhold consent to the refinancing of the construction loan and its sole and absolute discretion. There's no reference in that clause to any cabining of the discretion, whether it's unreasonable or reasonable, quite the opposite. The text of the master lease states that tax partners has sole and absolute discretion. So we believe that because the district court correctly found that the plaintiffs in this case have not alleged any contract that they can enforce against tax partners and therefore the FDIC, the breach of contract claim was correctly dismissed. I'll next address the two statutory claims under the South Carolina LLC Act, which were addressed by plaintiffs in their opening. As we explained in our brief, the operative provision of the LLC Act provides that members of LLCs may have fiduciary duties of either loyalty or care. And the scope of those duties, the extent depends on whether it's a manager-managed LLC or a member-managed LLC. The district court found that that tenant was a manager-managed LLC. And in their opening, as they did in their brief below, the plaintiffs argued that the district court should have considered H-3, which says that even in a manager-managed LLC, a non-manager like tax partners does have duties to the extent that they are exercising authority that is deemed managerial under the operating agreement. But of course that ignores the main point of our argument. It wasn't addressed in the reply brief below and it wasn't addressed a few minutes ago in oral argument, which is even if tax partners were a manager of tenant, even if it had every conceivable duty owed under the South Carolina LLC Act, the LLC Act by its terms only imposes duties of loyalty and care upon members of an LLC in favor of two groups of plaintiffs. One is the LLC itself, which as you look at page six, the graphic that is tenant. The other potential plaintiff are the other members of the LLC. Well, the other member of tenant besides tax partners is manager. Manager is also not a plaintiff in this case. They may be plaintiffs in the case pending in the district court that Judge Rao alluded to, but they are not plaintiffs in this case. By its terms, the LLC Act does not create any duties owed to someone outside of the LLC. Both these plaintiffs are outside the LLC and they do not dispute that. Plaintiffs also talked about their negligence claim and raised the argument that if in fact they don't have, if in fact tax partners doesn't have contractual duties, well, therefore it must have a duty that supports negligence claim. And then went on from there to say, well, if they have a duty that supports negligence claim, they also have duties supporting all their other tort claims. With respect, the fact that plaintiffs alleged that tax partners' duties came from a contract doesn't mean that if in fact they had no contractual duties, they had duties arising out of some other source. It means that tax partners has no duties to these plaintiffs. I mean, that is the alternative. The alternative isn't, well, if it's not a contract duty, it must be a duty that gives rise to tort. The only duties alleged here were coming from two contracts, the operating agreement and the master lease. And if there are no duties under those contracts, there are no duties anywhere pled in the complaint. We also addressed in our brief the other tort claims that the plaintiffs attempted would like to plead against the United States, but we submit had not been pled plausibly under Twombly. With respect to a common law breach of fiduciary duty claim, which wasn't even addressed in either a plaintiff's briefs or in their argument, there are no allegations giving anything but speculation that either of these two plaintiffs proposed any trust in tax partners to act in their interest and not tax partners' interest, nor are there allegations suggesting that tax partners accepted or induced any such trust. And with respect to the tortious of its contractual right to withhold consent to the refinancing of the construction loan for the purpose of fulfilling the FDIC's mandate of maximizing receivership assets and liquidating receiverships as expeditiously as possible, that's not an improper method, and that's not improper purpose under South Carolina law. And finally, with respect to plaintiff's request to that even if the district court correctly denied leave to amend because their claims weren't plausible, they should somehow get another opportunity. We believe that any such opportunity has been forfeited because it wasn't asked for below. Plaintiffs had an opportunity to plead plausible claims in response to the FDIC's motion and added no new factual allegations, nor did they file a Rule 59 or Rule 15 motion after dismissal. Under Harper Woods, we believe that that's been forfeited. I see that my time has expired. If the court has no questions, we would ask that the district court's judgment be affirmed. All right. Thank you, Mr. Gorisco. Mr. Nace, we'll give you two minutes on rebuttal. Thank you, Your Honors. I would like to just start, first of all, with the suggestion that there was nothing anywhere to suggest that holds consent. In fact, at page A86 of the appendix, the definition of consent of the investor member reads as such. Consent of the investor member means the prior written consent or approval of the investor member which consent may not be unreasonably withheld. That is in the cap on the first NBC tax partner's ability to withhold consent. It cannot be unreasonably withheld. That is a factual issue which, at this stage of the case, the plaintiff should be permitted to establish through discovery and through factual determinations in this case. With regard to the suggestion that negligence is improperly pled, I'm not really sure how to then, there is a hundred paragraph complaint that talks about the prior dealings, the prior relationship, that talks about the fact that the contracts include you can't unreasonably withhold consent. Then in a perfect example of how the district court failed to read the facts and alight most favorable to the plaintiff and read them the other way, when we in fact cited, again, this is pre-discovery, references to emails where FDIC threatened and informed the plaintiffs that they would be withholding consent waiting for a better deal, that was read against the plaintiffs because it came after the consent was offered. But if you read the facts and alight most favorable to the plaintiff, what that does is establishes a motive intention, a reason that the consent was withheld for so long and without any communication from FDIC. My time is up. I do believe that we have properly asked for the right to amend. The trial court considered, they ruled, the trial court ruled that we did properly ask to amend and that was not cross appealed. We would ask that the case be remanded and reversed for the minimum that we could get an unreasonable withheld comes from the tenant operating agreement, right? Yes, it does. And neither one of the plaintiffs are party to that agreement, right? That's correct. But it does, your honor, if I may, it does lay out, again, to the extent that we are outside of the contract claims and looking at the dealings of these parties with each other, it was very clear that the bank and thus FDIC knew that they had an obligation to not unreasonably withhold and that failure to do, or the unreasonable withholding of consent caused damage. And again, at this pleading stage of the case, we think we've pled a plausible claim. All right. Thank you. The case is submitted.
judges: Wilkins, Rao, Edwards